**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

_____ District of **Delaware**
(State)

Case number (*if known*): _____ Chapter **11**

☐ Check if this is an
amended filing

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy 06/22

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

1. **Debtor's name**

   Burgess BioPower, LLC

2. **All other names debtor used in the last 8 years**

   Include any assumed names, trade names, and *doing business as* names

3. **Debtor's federal Employer Identification Number (EIN)**

   3 5 – 2 4 1 0 7 9 1

4. **Debtor's address**

   | Principal place of business | Mailing address, if different from principal place of business |
   |---|---|
   | c/o CS Operations, Inc. | |
   | Number    Street | Number    Street |
   | 631 US Hwy 1, #300 | |
   | | P.O. Box |
   | North Palm Beach,  FL  33408 | |
   | City                State        ZIP Code | City                State        ZIP Code |
   | | **Location of principal assets, if different from principal place of business** |
   | Palm Beach | 1 Community Street |
   | County | Number    Street |
   | | |
   | | Berlin,                    NH        03570 |
   | | City                State        ZIP Code |

5. **Debtor's website (URL)**    www.burgessbiopower.com

Debtor    <u>Burgess BioPower, LLC</u>    Case number *(if known)* _____
   Name

| 6. | **Type of debtor** | |
|---|---|---|

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding  LLP)

☐ Other. Specify: _____

| 7. | **Describe debtor's business** | |
|---|---|---|

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C.  NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See
   http://www.uscourts.gov/four-digit-national-association-naics-codes .

   <u>2</u>  <u>2</u>  <u>1</u>  <u>1</u>

| 8. | **Under which chapter of the Bankruptcy Code is the debtor filing?** | |
|---|---|---|

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check **all** that apply:*

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

Debtor    Burgess BioPower, LLC _____    Case number (if known) _____
   Name

| | | |
|---|---|---|
| 9. | **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**<br><br>If more than 2 cases, attach a separate list. | ☒ No<br>☐ Yes. District _____ When _____ Case number _____<br>          MM / DD / YYYY<br>     District _____ When _____ Case number _____<br>          MM / DD / YYYY |
| 10. | **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**<br><br>List all cases. If more than 1, attach a separate list. | ☐ No<br>☒ Yes. Debtor __Berlin Station, LLC_____ Relationship __Affiliate_____<br>    District __of Delaware_____ When 02 / 09 / 2024<br>                 MM / DD / YYYY<br>    Case number, if known _____ |
| 11. | **Why is the case filed in *this district*?** | *Check all that apply:*<br>☒ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.<br>☐ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district. |
| 12. | **Does the debtor own or have possession of any real property or personal property that needs immediate attention?** | ☒ No<br>☐ Yes. Answer below for each property that needs immediate attention. Attach additional sheets if needed.<br><br>**Why does the property need immediate attention?** (*Check all that apply.*)<br>☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.<br>  What is the hazard? _____<br>☐ It needs to be physically secured or protected from the weather.<br>☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).<br>☐ Other _____<br><br>**Where is the property?** _____<br>         Number  Street<br>        _____<br>        City        State ZIP Code<br><br>**Is the property insured?**<br>☐ No<br>☐ Yes. Insurance agency _____<br>    Contact name _____<br>    Phone _____ |

▮ **Statistical and administrative information**

Debtor    <u>Burgess BioPower, LLC</u>                    Case number (if known)_____
          Name

---

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

---

**14. Estimated number of creditors**

| | | |
|---|---|---|
| ☒ 1-49 | ☐ 1,000-5,000 | ☐ 25,001-50,000 |
| ☐ 50-99 | ☐ 5,001-10,000 | ☐ 50,001-100,000 |
| ☐ 100-199 | ☐ 10,001-25,000 | ☐ More than 100,000 |
| ☐ 200-999 | | |

---

**15. Estimated assets**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☒ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☐ $100,000,001-$500 million | ☐ More than $50 billion |

---

**16. Estimated liabilities**

| | | |
|---|---|---|
| ☐ $0-$50,000 | ☐ $1,000,001-$10 million | ☐ $500,000,001-$1 billion |
| ☐ $50,001-$100,000 | ☐ $10,000,001-$50 million | ☐ $1,000,000,001-$10 billion |
| ☐ $100,001-$500,000 | ☐ $50,000,001-$100 million | ☐ $10,000,000,001-$50 billion |
| ☐ $500,001-$1 million | ☒ $100,000,001-$500 million | ☐ More than $50 billion |

---

## Request for Relief, Declaration, and Signatures

**WARNING --** Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  <u>02</u>   <u>09</u>   <u>2024</u>
            MM  / DD / YYYY

✗  <u>/s/ Dean Vomero</u>                          <u>Dean Vomero</u>
Signature of authorized representative of debtor        Printed name

Title <u>Chief Restructuring Officer</u>

---

Debtor    <u>Burgess BioPower, LLC</u>    Case number *(if known)* _____
　　　　　Name

**18. Signature of attorney**    ✘  */s/Chantelle D. McClamb*    Date    <u>02</u>  <u>09</u>  <u>2024</u>
　　　　　　　　　　　　　　　Signature of attorney for debtor    MM  / DD  / YYYY

　　　　　　　　　　<u>Chantelle D. McClamb</u>
　　　　　　　　　　Printed name

　　　　　　　　　　<u>Gibbons P.C.</u>
　　　　　　　　　　Firm name

　　　　　　　　　　<u>300 Delaware Ave., Suite 1015</u>
　　　　　　　　　　Number    Street

　　　　　　　　　　<u>Wilmington</u>    <u>DE</u>    <u>19801</u>
　　　　　　　　　　City    State    ZIP Code

　　　　　　　　　　<u>(302) 518-6300</u>    <u>cmcclamb@gibbonslaw.com</u>
　　　　　　　　　　Contact phone    Email address

　　　　　　　　　　<u>5978</u>    <u>DE</u>
　　　　　　　　　　Bar number    State

**BURGESS BIOPOWER, LLC**

**BOARD RESOLUTIONS**

**JANUARY 19, 2024**

**BOARD RESOLUTION AUTHORIZING CHAPTER 11**

The undersigned, being all of the members of the board of directors (the "***Board***") of Burgess BioPower, LLC, a Delaware limited liability company (the "***Company***"), hereby take the following actions and adopt the following resolutions pursuant to the operating agreement of the Company and in accordance with the provisions of the Delaware Limited Liability Company Act:

WHEREAS, the Board has considered presentations by the management and the financial and legal advisors of the Company regarding the assets, liabilities and liquidity situation of the Company, the strategic alternatives available to it, and the effect of the foregoing on the Company's business, prospects and enterprise value;

WHEREAS, the Board has had the opportunity to consult with the management and the financial and legal advisors of the Company and to fully consider each of the strategic alternatives available to the Company and has determined, in the judgment of the Board, that the following resolutions are in the best interests of the Company and its creditors;

WHEREAS, the Board has reviewed and considered the Company's need for financing in connection with the Chapter 11 Case (as defined below) under the Bankruptcy Code (as defined below), and has determined that it is in the best interests of the Company, its equity holders, its creditors as a whole, and other parties in interest, for the Company and certain of its affiliates to enter into the DIP Credit Agreements (as defined below) and one or more related agreements and amendments thereto with the financial institutions from time to time party thereto, pursuant to which the Company and its affiliate will obtain post-petition debtor-in-possession financing to fund their Chapter 11 Cases and grant the liens, including the priming liens, required thereby;

WHEREAS, the Board has reviewed and considered the Company's and its affiliates collective need under the DIP Documents (as defined below) to provide adequate protection to the Prepetition Secured Lenders (as defined below) in exchange for the ability for the Company and its affiliate to use certain cash collateral that is security for the Prepetition Secured Lenders party to certain of the Company and its affiliates' prepetition debt agreements;

WHEREAS, the Board has reviewed and considered the need for the Company to take certain actions in order to perfect any lien or security interest granted under the DIP Order (as defined below) or any of the Credit and Security Documents (as defined below);

WHEREAS, the Board reviewed and considered the Company's need to enter into a restructuring support agreement by and among the Company, and is Prepetition Secured Lenders (a "***Restructuring Support Agreement***"), in support of a *Chapter 11 Plan of Reorganization of Burgess BioPower, LLC and its Debtor Affiliates* (a "Plan," and together with the Restructuring Support Agreement, any disclosure statement and related documents in support of the foregoing the "***Plan Documents***"); and

WHEREAS, the Board has reviewed and considered the need for Authorized Signatories (as defined below) to take further actions to carry out the intent and purpose of the following

1

resolutions, perform the obligations of the Company under the Bankruptcy Code and pay fees and expenses in connection with the transactions contemplated by the below resolutions; and

WHEREAS, the Board has reviewed and considered certain actions that may have previously been taken by any director, officer, employee, manager, member, stockholder, equityholder, or agent in connection with or related to the matter set forth in the below resolutions;

NOW, THEREFORE, BE IT:

## CHAPTER 11 FILING

RESOLVED:  That the members of the Board have considered their fiduciary duties under applicable law in exercising their powers and discharging their duties, to act honestly and in good faith with a view to the best interests of the Company as a whole, to exercise the care, diligence, and skill that reasonably prudent person would exercise in comparable circumstances; and

RESOLVED:  That, to the extent not already appointed and currently serving as such pursuant to separate resolutions or consents, the following individuals be and hereby are, appointed as an officer of the Company with the titles set forth next to his or her or their name below, to service until his or her or their successor(s) are duly elected and qualified:

Dean Vomero – Chief Restructuring Officer

RESOLVED:  That, in the judgment of the Board, it is desirable and in the best interests of the Company, its creditors, and other parties in interest, that the Company shall be, and hereby is, authorized to file, or cause to be filed, a voluntary petition for relief (the "***Chapter 11 Case***") under the provisions of chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "***Bankruptcy Code***"), in the United States Bankruptcy Court for the District of Delaware (the "***Bankruptcy Court***"); and

RESOLVED:  That Dean Vomero and any other the duly appointed officers of the Company (collectively, the "***Authorized Signatories***"), acting alone or with one or more other Authorized Signatories be, and hereby is, authorized, empowered, and directed to execute and file on behalf of the Company all petitions, schedules, lists, motions, certificates, declarations and other pleadings, papers, or documents, including the Plan Documents, and to take any and all action that they deem necessary, appropriate, or desirable to obtain such relief, including, without limitation, any action necessary, appropriate, or desirable to maintain the ordinary course operation of the Company's business.

## RETENTION OF PROFESSIONALS

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ the law firm of Foley Hoag LLP ("***Foley Hoag***"), as general bankruptcy counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including the preparation and filing of any motions, objections, replies, applications, or pleadings and conducting any potential sale process on behalf of the Company in the Chapter 11 Case; and in connection therewith, each of the Authorized Signatories, acting alone or in any

combination, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain Foley Hoag;

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ the law firm of Gibbons P.C. ("**Gibbons**"), as Delaware counsel to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations, including the preparation and filing of any motions, objections, replies, applications, or pleadings and conducting any potential sale process on behalf of the Company in the Chapter 11 Case; and in connection therewith, each of the Authorized Signatories, acting alone or in any combination, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain Gibbons;

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ Applied Business Strategy LLC ("**ABS**") to provide the Company with a chief restructuring officer (the "**Chief Restructuring Officer**") to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Case; and in connection therewith, each of the Authorized Signatories, acting alone or in any combination, with power of delegation, hereby is, authorized, empowered, and directed, on behalf of and in the name of the Company, to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of ABS;

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ SSG Capital Advisors, L.P. ("**SSG**") as investment banker and to represent and assist the Company in connection with any sale or restructuring of the Company's assets and liabilities and in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations in connection with the Chapter 11 Case; and in connection therewith, each of the Authorized Signatories, acting alone or in any combination, with power of delegation, hereby is, authorized, empowered, and directed, on behalf of and in the name of the Company, to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of SSG;

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ Epiq Corporate Restructuring, LLC ("**Epiq**") as notice, claims, solicitation, and balloting agent in connection with the Chapter 11 Case and to represent and assist the Company in carrying out its duties under the Bankruptcy

3

Code, and to take any and all actions to advance the Company's rights and obligations; and in connection therewith, each of the Authorized Signatories, acting alone or in any combination, with power of delegation, is hereby authorized, empowered, and directed, on behalf of and in the name of the Company, to execute appropriate retention agreements, pay appropriate retainers, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed appropriate applications for authority to retain the services of Epiq;

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed to employ any other professionals to assist the Company in carrying out its duties under the Bankruptcy Code; and in connection therewith, each of the Authorized Signatories, acting alone or in any combination, with power of delegation, is hereby authorized, empowered, and directed to execute appropriate retention agreements, pay appropriate retainers and fees, if required, prior to and immediately upon the filing of the Chapter 11 Case, and to cause to be filed an appropriate application for authority to retain the services of any other professionals as necessary, appropriate, or desirable; and

RESOLVED: That each of the Authorized Signatories, acting alone or in any combination, be, and each hereby is, with power of delegation, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers and, in connection therewith, to employ and retain all assistance by legal counsel, accountants, financial advisors, restructuring advisors, and other professionals and to take and perform any and all further acts and deeds that each of the Authorized Signatories deem necessary, appropriate, or desirable in connection with the Chapter 11 Case.

## USE OF CASH COLLATERAL AND ADEQUATE PROTECTION

RESOLVED: That the Board deems it desirable and in the best interest of the Company, its creditors, other stakeholders, and other parties in interest to obtain the benefits of the use of cash collateral, as such term is defined in section 363(a) of the Bankruptcy Code ("*Cash Collateral*"), which is security for the Company's prepetition secured lenders (the "*Prepetition Secured Lenders*") under certain credit facilities by and among the Company, the guarantors party thereto, and the lenders party thereto;

RESOLVED: That in order to use and obtain the benefits of the Cash Collateral, and in accordance with the Bankruptcy Code, the Company will provide certain adequate protection to the Prepetition Secured Lenders (the "*Adequate Protection Obligations*") as documented in a proposed interim order (the "*Cash Collateral Order*") to be submitted for approval of the Bankruptcy Court;

RESOLVED: That the form, terms, and provisions of the Cash Collateral Order to which the Company shall be subject, and the actions and transactions contemplated thereby, are authorized and approved in all respects; and each Authorized Signatory is authorized, empowered, and directed in the name of, and on behalf of, the Company, to take such actions and negotiate or cause to be prepared and negotiated

and to execute, deliver, perform, and cause the performance of, the Cash Collateral Order;

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, in the name and on behalf of the Company, to take all such further actions, or cause all such further actions to be taken and to execute and deliver all such further agreements, documents, instruments, certificates recordings, and filings, in the name and on behalf of the Company, as in the determination of such Authorized Signatory shall be necessary, proper, or advisable in order to fully carry out the intent and accomplish the purposes of the foregoing resolutions and to consummate the transactions contemplated thereby, such authority to be conclusively evidenced by the execution of any document or the taking of any such action by such Authorized Signatory; and

RESOLVED: That each of the Authorized Signatories be, and hereby is, authorized, empowered, and directed in the name of, and on behalf of, the Company to seek authorization and approval to use Cash Collateral pursuant to the Cash Collateral Order, and any Authorized Signatory be, and hereby is, authorized, empowered, and directed to negotiate, execute, and deliver any and all agreements, instruments, or documents, by or on behalf of the Company, including the Adequate Protection Obligations to the Prepetition Secured Lenders in accordance with the Bankruptcy Code, as well as any additional or further agreements for the use of Cash Collateral in connection with the Chapter 11 Case, which agreements may require the Company to grant adequate protection and liens to the Prepetition Secured Lenders and each other agreement, instrument, or document to be executed and delivered in connection therewith, by or on behalf of the Company pursuant thereto or in connection therewith, all with such changes therein and additions thereto as any Authorized Signatory approves, such approval to be conclusively evidenced by the taking of such action or by the execution and delivery thereof.

## POSTPETITION FINANCING

RESOLVED: That it is appropriate and in the best interest of the Company its equity holders, its creditors as a whole, and other parties in interest, that the Company shall be, and hereby is, authorized to obtain and/or provide senior secured superpriority postpetition financings (the "DIP Financings") on the terms and conditions of the proposed debtor in possession credit agreements (the "DIP Credit Agreements"), which terms and conditions shall include any intercompany debtor-in-possession financing arrangements, whether evidenced by a separate credit agreement, the Interim DIP Order or otherwise, among, as applicable, the applicable Borrowers, the Guarantors, the financial institutions from time to time party thereto as lenders (the "DIP Lenders"), the administrative agents and collateral agents (in such capacities, the "DIP Agents" and each, individually, a "DIP Agent"), and other agents and entities from time to time party thereto substantially in the forms presented to such Board on or prior to the adoption of this resolution, with such changes, additions, and modifications thereto as any Authorized Person executing the same shall approve, such approval to be conclusively evidenced by an Authorized Person's execution and delivery thereof; and be it further;

RESOLVED: That each of the Authorized Persons is authorized and directed to enter into, execute, deliver and perform the transactions, and any and all other agreements, instruments and documents deemed necessary or desirable to evidence and secure the obligations under the DIP Financing on the terms set forth in the Credit and Security Documents (as defined herein), including without limitation, any loan or credit agreements, promissory notes, deeds of trust, mortgages, deeds to secure debt, security agreements, pledge agreements, assignments of leases and rents, assignments, guaranties, subordination agreements, intercreditor agreements, agreements with third parties (including, without limitation, lockbox agreements, cash management agreements and deposit account control agreements) relating to the collateral, indemnity agreements, certificates, affidavits, financing statements, applications, notices and other agreements of any kind or nature whatsoever substantially in the form presented to such Board on or in advance of the date hereof, with such changes, additions, and modifications thereto as any Authorized Person executing the same shall approve, such approval to be conclusively evidenced by an Authorized Person's execution and delivery thereof (collectively, with the DIP Credit Agreements, the "Credit and Security Documents");

RESOLVED: that the form, terms and provisions of, the execution and delivery of, and the performance of the transactions and obligations contemplated by the Credit and Security Documents to which the Company is a party, are hereby, authorized, approved and adopted in all respects and the Company is hereby authorized to (i) execute and deliver the Credit and Security Documents to which it is a party, (ii) perform its obligations thereunder, including to borrow or lend, as applicable, under the DIP Credit Agreements, mortgage, charge, assign, pledge and otherwise transfer and encumber and grant security interests in its present and future real and leasehold property, equipment, inventory, intangibles, undertakings and other property and assets as security for its present and future obligations under or in connection with the DIP Financing and the Credit and Security Documents to which the Company is a party, and (iii) take all actions contemplated thereby;

RESOLVED: that the form, terms, and provisions of the order of the Bankruptcy Court for DIP Financing (the "Interim DIP Order") to which the Company is or will be subject and the actions and transactions contemplated thereby, and each Authorized Person be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the Interim DIP Order, and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents to which  is or will be a party, including any security and pledge agreement or guaranty agreement (collectively with the Interim DIP Order and the Credit and Security Documents, the "DIP Documents"), incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof presented to such Board on prior to the adoption of this resolution, with such changes, additions, and modifications thereto as an Authorized Person executing the same shall approve, such approval to be conclusively evidenced by an Authorized Person's execution and delivery thereof;

6

RESOLVED: that each of the Authorized Persons is authorized and directed, in the name and on behalf of the Company, to file or to authorize the Agent to file any Uniform Commercial Code (the "UCC") financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Company that the Agent deems necessary, desirable or appropriate to perfect any lien or security interest granted under the Interim DIP Order or any of the Credit and Security Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the Agent may reasonably request to perfect the security interests of the Agent under the Interim DIP Order;

RESOLVED: that each of the Authorized Persons is authorized and directed, in the name and on behalf of the Company, to take all such further actions, including to pay or approve the payment of appropriate fees and expenses payable in connection with the Adequate Protection Obligations and appropriate fees and expenses incurred by or on behalf of the Company, which shall be in his or her sole judgment necessary, proper or advisable to perform any of the Company's obligations under or in connection with the Interim DIP Order, the Credit and Security Documents, any other documents related to the provision of adequate protection, or any of the other ancillary documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and

RESOLVED: That the Company, as debtor and debtor in possession under the Bankruptcy Code, be authorized, empowered, and directed to negotiate and obtain the use of cash collateral or other similar arrangements, including, without limitation, to enter into any guarantees and to pledge and grant liens on and claims against the Company's assets as may be contemplated by or required under the terms of cash collateral agreements or other similar arrangements, in such amounts as is reasonably necessary for the continuing conduct of the affairs of the Company, the Chapter 11 Case and any of the Company's affiliates who may also, concurrently with the Company's petition, file for relief under the Bankruptcy Code.

## RESTRUCTURING SUPPORT AGREEMENT AND PLAN DOCUMENTS

RESOLVED: That, in connection with the Chapter 11 Case, the Board has determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company to enter into a Restructuring Support Agreement and Plan Support Documents by and between the Company and the Prepetition Secured Lenders in a form to be negotiated by the Chief Restructuring Officer and to be approved by the Board and/or any Special Committee of the Board;

## ASSET PURCHASE AGREEMENT

RESOLVED: That, in connection with the Chapter 11 Case, the Board has determined it is desirable and in the best interest of the Company to have the Chief Restructuring Officer and SSG commence, after the filing of the Chapter 11 Case, the marketing for potential sale of the Company's assets and pursue negotiations with any interested parties regarding one or more sales of such assets or otherwise, and propose the form of, for the Company to enter into, an asset purchase agreement (the "*Asset Purchase Agreement*") with a potential buyer and back-up buyer, as applicable, subject to bankruptcy court approval, and to continue, after in each case subject to further authorization of the Board and/or any Special Committee of the Board, of any such sale;

RESOLVED: That, the terms and provisions of (i) the Asset Purchase Agreement, with such changes therein and additions thereto as the Authorized Signatories executing the same shall approve, the execution thereof by an Authorized Signatory to be deemed conclusive evidence of such approval, and (ii) the other sale documents including, without limitation, any exhibits, appendices and schedules thereto, all transactions contemplated thereby and all actions taken by the Authorized Signatory in connection therewith be, and hereby are, authorized, approved and ratified in all respects with such modifications, changes, additions and deletions thereto as may be approved or deemed necessary, desirable, convenient, advisable or appropriate by an Authorized Signatory executing the same, the execution thereof by such Authorized Signatory to be conclusive evidence of such approval, necessity, desirability, convenience, advisability or appropriateness; and

RESOLVED: That, the execution and delivery of the Asset Purchase Agreement and the other sale documents, including, without limitation, any exhibits, appendices, and schedules thereto, and the performance by the Company of its obligations thereunder, hereby are expressly authorized, adopted, confirmed, ratified and approved, and such approval is intended to and shall constitute all authorization and approval required by the Board.

## GENERAL

RESOLVED: That, in addition to the specific authorizations heretofore conferred upon the Authorized Signatories, each of the Authorized Signatories (and their designees and delegates) be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including, but not limited to, filing fees, in each case as in such Authorized Signatory's judgment, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

RESOLVED: That the Board has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waives any right to have received such notice;

8

RESOLVED: That any and all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, adopted, confirmed, and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Board;

RESOLVED: That each of the Authorized Signatories (and their designees and delegates) be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of the Company with respect to the transactions contemplated by these resolutions hereunder, as such Authorized Signatory shall deem necessary, appropriate, or desirable in such Authorized Signatory's reasonable business judgment as may be necessary, appropriate, or desirable to effectuate the purposes of the transactions contemplated herein; and

RESOLVED: That this unanimous omnibus written consent may be executed in as many counterparts as may be required; all counterparts shall collectively constitute one and the same consent; and facsimile or photostatic copies of signatures to this consent shall be deemed to be originals and may be relied on to the same extent as the originals.

**IN WITNESS WHEREOF**, each of the undersigned directors has executed this Unanimous Written Consent of Directors, which will be effective on the earliest date by which it has been executed by all of the members of the Board (the "***Effective Date***"):

Jean R. Halle

Edward J. Dwyer

Antonio Bianco

Drew McManigle

Suzane M. Hay

Teresa Premeaux

Being all of the Members of the Board of Directors of Burgess BioPower, LLC

Effective Date: January 19, 2024

**BURGESS BIOPOWER, LLC**

**SPECIAL COMMITTEE RESOLUTIONS**

**FEBRUARY 4, 2024**

**SPECIAL COMMITTEE RESOLUTION AUTHORIZING RESTRUCTURING SUPPORT AGREEMENT FOR CHAPTER 11 FILING AND OTHER AGREEMENTS**

The undersigned, being all of the special committee members of the board of directors (the "*Special Committee*") of Burgess BioPower, LLC, a Delaware limited liability company (the "*Company*"), hereby take the following actions and adopt the following resolutions pursuant to the operating agreement of the Company and in accordance with the provisions of the Delaware Limited Liability Company Act:

WHEREAS, the Special Committee has considered presentations by the management and the financial and legal advisors of the Company regarding the assets, liabilities and liquidity situation of the Company, the strategic alternatives available to it, and the effect of the foregoing on the Company's business, prospects and enterprise value;

WHEREAS, the Special Committee has had the opportunity to consult with the management and the financial and legal advisors of the Company and to fully consider each of the strategic alternatives available to the Company and has determined, in the judgment of the Special Committee, that the following resolutions are in the best interests of the Company and its creditors;

WHEREAS, the Special Committee has approved the Company's need for financing in connection with the filing of a voluntary petition for relief (the "*Chapter 11 Case*") under the provisions of chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101-1532, in the United States Bankruptcy Court for the District of Delaware, and has determined that it is in the best interests of the Company, its equity holders, its creditors as a whole, and other parties in interest, for the Company and certain of its affiliates to enter into one or more related agreements with the financial institutions from time to time party thereto, pursuant to which the Company and its affiliate will obtain post-petition debtor-in-possession financing to fund their Chapter 11 Cases and grant the liens, including the priming liens, required thereby;

WHEREAS, the Special Committee reviewed and considered the Company's need to enter into a restructuring support agreement by and among the Company, and is Prepetition Secured Lenders (a "*Restructuring Support Agreement*"), in support of a  *Chapter 11 Plan of Reorganization of Burgess BioPower, LLC and its Debtor Affiliates* (a "*Plan*," and together with the Restructuring Support Agreement, any disclosure statement and related documents in support of the foregoing the "*Plan Documents*");

WHEREAS, in connection with the Chapter 11 Case and its operating needs, the Special Committee reviewed and considered the Company's need to enter into an agreement to transfer their lead market participant (the "*Lead Market Participant Agreement*");

WHEREAS, the Special Committee has reviewed and considered the Company's and its affiliates collective need under the DIP Documents (as defined below) to provide adequate protection to the Prepetition Secured Lenders (as defined below) in exchange for the ability for the Company and its affiliate to use certain cash collateral that is security for the Prepetition Secured Lenders party to certain of the Company and its affiliates' prepetition debt agreements;

1

WHEREAS, the Special Committee has reviewed and considered the need for the Company to take certain actions in order to perfect any lien or security interest granted under the DIP Order (as defined below) or any of the Credit and Security Documents (as defined below); and

WHEREAS, the Special Committee has reviewed and considered certain actions that may have previously been taken by any director, officer, employee, manager, member, stockholder, equityholder, or agent in connection with or related to the matter set forth in the below resolutions.

NOW, THEREFORE, BE IT:

**RESTRUCTURING SUPPORT AGREEMENT AND PLAN DOCUMENTS**

RESOLVED:    That, in connection with the Chapter 11 Case, the Special Committee has determined, after due consultation with the management and the legal and financial advisors of the Company, that it is desirable and in the best interests of the Company to enter into a Restructuring Support Agreement and Plan Support Documents by and between the Company and the Prepetition Secured Lenders in a form to be negotiated by the Chief Restructuring Officer and to be approved by the board of directors of the Company and/or the Special Committee;

RESOLVED: That, in connection with the Chapter 11 Case, the Special Committee has determined it is desirable and in the best interest of the Company to enter into that certain Restructuring Support Agreement by and between the Company and the Company's senior secured lenders, substantially in the form attached hereto as Exhibit A;

RESOLVED: That, in connection with the Chapter 11 Case, the Special Committee has determined it is desirable and in the best interest of the Company to enter into that certain Plan by and between the Company and the Company's senior secured lenders, substantially in the form attached hereto as Exhibit B;

RESOLVED: That, in connection with the Chapter 11 Case, the Special Committee has determined it is desirable and in the best interest of the Company to enter into that certain Lead Market Participant Agreement, substantially in the form attached hereto as Exhibit C;

RESOLVED: That, the terms and provisions of the Plan Documents and the Lead Market Participant Agreement, with such changes therein and additions thereto as Dean Vomero and any other the duly appointed officers of the Company (collectively, the "**Authorized Signatories**") executing the same shall approve, the execution thereof by an Authorized Signatory to be deemed conclusive evidence of such approval, and without limitation, any exhibits, appendices and schedules thereto, all transactions contemplated thereby and all actions taken by the Authorized Signatory in connection therewith be, and hereby are, authorized, approved and ratified in all respects with such modifications, changes, additions and deletions thereto as may be approved or deemed necessary, desirable, convenient, advisable or appropriate by an Authorized Signatory executing the same, the execution thereof by such Authorized Signatory to be conclusive evidence of such approval, necessity, desirability, convenience, advisability or appropriateness; and

RESOLVED: That, the execution and delivery of the Restructuring Support Agreement, the other Plan Documents and the Lead Market Participant Agreement, including, without limitation, any exhibits, appendices, and schedules thereto, and the performance by the Company of its obligations thereunder, hereby are expressly authorized, adopted, confirmed, ratified and approved, and such approval is intended to and shall constitute all authorization and approval required by the Special Committee.

## POSTPETITION FINANCING

RESOLVED: That it is appropriate and in the best interest of the Company its equity holders, its creditors as a whole, and other parties in interest, that the Company shall be, and hereby is, authorized to obtain and/or provide senior secured superpriority postpetition financings (the "*DIP Financings*") on the terms and conditions of the proposed debtor in possession credit agreements (the "*DIP Credit Agreements*"), which terms and conditions shall include any intercompany debtor-in-possession financing arrangements, whether evidenced by a separate credit agreement, the Interim DIP Order or otherwise, among, as applicable, the applicable Borrowers, the Guarantors, the financial institutions from time to time party thereto as lenders (the "*DIP Lenders*"), the administrative agents and collateral agents (in such capacities, the "*DIP Agents*" and each, individually, a "*DIP Agent*"), and other agents and entities from time to time party thereto substantially in the forms presented to the Special Committee on or prior to the adoption of this resolution, with such changes, additions, and modifications thereto as any Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by an Authorized Signatory's execution and delivery thereof; and be it further;

RESOLVED: That each of the Authorized Signatories is authorized and directed to enter into, execute, deliver and perform the transactions, and any and all other agreements, instruments and documents deemed necessary or desirable to evidence and secure the obligations under the DIP Financing on the terms set forth in the Credit and Security Documents (as defined herein), including without limitation, any loan or credit agreements, promissory notes, deeds of trust, mortgages, deeds to secure debt, security agreements, pledge agreements, assignments of leases and rents, assignments, guaranties, subordination agreements, intercreditor agreements, agreements with third parties (including, without limitation, lockbox agreements, cash management agreements and deposit account control agreements) relating to the collateral, indemnity agreements, certificates, affidavits, financing statements, applications, notices and other agreements of any kind or nature whatsoever substantially in the form presented to the Special Committee on or in advance of the date hereof, with such changes, additions, and modifications thereto as any Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by an Authorized Signatory's execution and delivery thereof (collectively, with the DIP Credit Agreements, the "*Credit and Security Documents*");

RESOLVED: That the form, terms and provisions of, the execution and delivery of, and the performance of the transactions and obligations contemplated by the Credit and

DocuSign Envelope ID: 520612A6-99EE-428B-A964-975993185D4E

Security Documents to which the Company is a party, are hereby, authorized, approved and adopted in all respects and the Company is hereby authorized to (i) execute and deliver the Credit and Security Documents to which it is a party, (ii) perform its obligations thereunder, including to borrow or lend, as applicable, under the DIP Credit Agreements, mortgage, charge, assign, pledge and otherwise transfer and encumber and grant security interests in its present and future real and leasehold property, equipment, inventory, intangibles, undertakings and other property and assets as security for its present and future obligations under or in connection with the DIP Financing and the Credit and Security Documents to which the Company is a party, and (iii) take all actions contemplated thereby;

RESOLVED:   That the form, terms, and provisions of the order of the Bankruptcy Court for DIP Financing (the "***Interim DIP Order***") to which the Company is or will be subject and the actions and transactions contemplated thereby, and each Authorized Signatory be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of, the Interim DIP Order, and such other agreements, certificates, instruments, receipts, petitions, motions, or other papers or documents to which is or will be a party, including any security and pledge agreement or guaranty agreement (collectively with the Interim DIP Order and the Credit and Security Documents, the "***DIP Documents***"), incur and pay or cause to be paid all fees and expenses and engage such persons, in each case, in the form or substantially in the form thereof presented to the Special Committee on prior to the adoption of this resolution, with such changes, additions, and modifications thereto as an Authorized Signatory executing the same shall approve, such approval to be conclusively evidenced by an Authorized Signatory's execution and delivery thereof;

RESOLVED:   That each of the Authorized Signatory is authorized and directed, in the name and on behalf of the Company, to file or to authorize the Agent to file any Uniform Commercial Code (the "***UCC***") financing statements, any other equivalent filings, any intellectual property filings and recordation and any necessary assignments for security or other documents in the name of the Company that the Agent deems necessary, desirable or appropriate to perfect any lien or security interest granted under the Interim DIP Order or any of the Credit and Security Documents, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired" and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in respect of real property of the Company and such other filings in respect of intellectual and other property of the Company, in each case as the Agent may reasonably request to perfect the security interests of the Agent under the Interim DIP Order;

RESOLVED:   That each of the Authorized Signatories is authorized and directed, in the name and on behalf of the Company, to take all such further actions, including to pay or approve the payment of appropriate fees and expenses payable in connection with the Adequate Protection Obligations and appropriate fees and expenses incurred by or on behalf of the Company, which shall be in his or her sole judgment necessary,

proper or advisable to perform any of the Company's obligations under or in connection with the Interim DIP Order, the Credit and Security Documents, any other documents related to the provision of adequate protection, or any of the other ancillary documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions; and

RESOLVED:    That the Company, as debtor and debtor in possession under the Bankruptcy Code, be authorized, empowered, and directed to negotiate and obtain the use of cash collateral or other similar arrangements, including, without limitation, to enter into any guarantees and to pledge and grant liens on and claims against the Company's assets as may be contemplated by or required under the terms of cash collateral agreements or other similar arrangements, in such amounts as is reasonably necessary for the continuing conduct of the affairs of the Company, the Chapter 11 Case and any of the Company's affiliates who may also, concurrently with the Company's petition, file for relief under the Bankruptcy Code.

**GENERAL**

RESOLVED:    That, in addition to the specific authorizations heretofore conferred upon the Authorized Signatories, each of the Authorized Signatories (and their designees and delegates) be, and hereby is, authorized and empowered, in the name of and on behalf of the Company, to take or cause to be taken any and all such other and further action, and to execute, acknowledge, deliver, and file any and all such agreements, certificates, instruments, and other documents and to pay all expenses, including, but not limited to, filing fees, in each case as in such Authorized Signatory's judgment, shall be necessary, appropriate, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein;

RESOLVED:    That the Special Committee has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of the Company, or hereby waives any right to have received such notice;

RESOLVED: That any and all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of the Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, adopted, confirmed, and ratified as the true acts and deeds of the Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of the Special Committee;

RESOLVED: That each of the Authorized Signatories (and their designees and delegates) be, and hereby is, authorized and empowered to take all actions or to not take any action in the name of the Company with respect to the transactions contemplated by these resolutions hereunder, as such Authorized Signatory shall deem necessary, appropriate, or desirable in such Authorized Signatory's reasonable business judgment as may be necessary, appropriate, or desirable to effectuate the purposes of the transactions contemplated herein; and

RESOLVED:    That this unanimous omnibus written consent may be executed in as many counterparts as may be required; all counterparts shall collectively constitute one and the same consent; and facsimile or photostatic copies of signatures to this consent shall be deemed to be originals and may be relied on to the same extent as the originals.

**IN WITNESS WHEREOF**, each of the undersigned directors has executed this Unanimous Written Consent of Directors, which will be effective on the earliest date by which it has been executed by all of the members of the Special Committee (the "*Effective Date*"):



Drew McManigle

Suzane M. Hay

Teresa Premeaux

Being all of the Members of the Special Committee of Directors of Burgess BioPower, LLC

Effective Date: February 4, 2024

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re | Chapter 11 |
| BURGESS BIOPOWER, LLC, | Case No. _____ (_____) |
| Debtor. | Federal Tax I.D. No. 32-2410971 |

**COMBINED CORPORATE OWNERSHIP STATEMENT**
**AND LIST OF EQUITY SECURITY HOLDERS**
**PURSUANT TO FED. R. BANKR. P. 1007(a)(1), 1007(a)(3), and 7007.1**

Pursuant to Rules 1007(a)(1), 1007(a)(3) and 7007.1 of the Federal Rules of Bankruptcy Procedure, Burgess BioPower, LLC, the above captioned debtor and debtor in possession (the "Debtor"), respectfully represents:

1.      The Debtor is 100% owned by Burgess Holding, LLC, located at c/o CS Operations, Inc., 631 US Hwy 1, #300, North Palm Beach, FL 33408.

2.      Burgess Holding, LLC is 100% owned by Newco Energy Holdings, LLC.

3.      Newco Energy Holdings, Inc. is 33.3% owned by Newco Blocker I, Inc., 33.3% owned by Berlin Project Holdings, Inc., and 33.3% owned by GBI New Hampshire I, LLC.

4.      Newco Blocker I, Inc. is 100% owned by Newco Energy, LLC.

5.      Berlin Project Holdings, Inc. is 100% owned by 3Cubed, LLC.

6.      GBI New Hampshire I, LLC is 100% owned by Acek Biomass Energy, S.L.

| Fill in this information to Identify the case: |
| --- |
| Debtor Name:  Burgess BioPower, LLC |
| United States Bankruptcy Court for the:    District of Delaware |
| Case Number (If known): |

☐ Check if this is an
   amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | PUBLIC SERVICE COMPANY OF NEW HAMPSHIRE DOING BUSINESS AS EVERSOURCE ENERGY PO BOX 56003 BOSTON, MA  02205-6003 | CONTACT: C/O HUNTON ANDREWS KURTH LLP (ATTN: MICHAEL R. PERRY, ESQ.) PHONE: 617-648-2742 FAX: 212-309-1100 MPERRY@HUNTONAK.COM | UTILITY | CONTINGENT, UNLIQUDATED, DISPUTED | | | $27,819.25 |

Fill in this information to identify the case and this filing:

Debtor Name  Burgess BioPower, LLC

United States Bankruptcy Court for the: _____ District of **Delaware**
(State)

Case number (*If known*): _____

Official Form 202

# Declaration Under Penalty of Perjury for Non-Individual Debtors
12/15

**An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.**

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.**

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐ *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

☐ *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

☐ *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

☐ *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

☐ *Schedule H: Codebtors* (Official Form 206H)

☐ *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

☐ Amended *Schedule* _____

☒ *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

☒ Other document that requires a declaration  Combined Corporate Ownership Statement and List of Equity Interest Holders

I declare under penalty of perjury that the foregoing is true and correct.

Executed on  02  09  2024
MM / DD / YYYY

✘ /s/ Dean Vomero
Signature of individual signing on behalf of debtor

Dean Vomero
Printed name

Chief Restructuring Officer
Position or relationship to debtor